THE ALLEGANY OIL COMPANY, LIMITED, RESPONDENT, *v.* THE BRADFORD OIL COMPANY AND OTHERS, APPELLANTS.

*Lease of land for boring of oil wells therein—when trespass relating thereto restrained by injunction—when lessor not bound to re-enter to enforce a forfeiture—what a sufficient notice of his election to enforce it.*

October 29, 1875, one Brandell entered into a contract, under seal, with one Stevens, by which it was agreed that the latter should, for the term of fifteen years, have the right to enter upon and use the lands of the former so far as might be necessary to enable him to bore for oil, reserving to Brandell the one-eighth part of all oil produced. The contract also provided, that unless Stevens should commence to bore the said well within the period of nine months from the date thereof, that then the same was "to become void and cease to be of any binding effect." The contract was duly recorded and subsequently assigned to the defendant, who on February 22, 1877, entered upon the land and commenced to bore a well therein.

On September 7, 1876, Brandell, who had remained in possession of the premises and in no way waived, extended or qualified the fulfillment of the said contract, executed another and a similar lease to one Marsh and others, conferring upon them the exclusive right to dig and bore for oil on the farm, for the term of twelve years. On January 17, 1876, this lease was duly recorded. Thereafter the same was duly assigned to the plaintiff, who, within the time therein specified, entered upon the land and commenced to bore a well therein.

This action was brought by the plaintiff against the defendant and his assignees, and Brandell, to procure a judgment declaring the Stevens lease forfeited and annulled, and to restrain the defendants from entering upon the land or boring for oil therein.

*Held,* that even though the lease to Stevens appeared upon its face to have become void by reason of the failure of the lessees to commence operations within the time limited by it, and though the act of the defendant in thereafter entering upon the land was a mere trespass, yet as the controversy related to the sinking and boring of oil wells in land, in violation of rights therein claimed by the plaintiff, a court of equity would grant relief by an injunction.

That as Brandell continued at all times to occupy the land, it was not necessary that he should re-enter or give any notice of his intention to enforce the forfeiture occasioned by the neglect of the lessees to commence operations within the time limited.

That even if any overt act or notice was required, the execution and delivery of the new lease to Marsh was a sufficient declaration of his election to enforce the forfeiture.

The defendant offered to show that after the execution and delivery of the lease to Marsh, Brandell consented to his entering upon the land.

*Held*, that the evidence was properly rejected as immaterial.

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

*Wm. Cary*, for the appellants.

*D. H. Bolles*, for the respondent.

TALCOTT, P. J.:

This is an appeal from a judgment entered at a Special Term in Cattaraugus county.

The action was in equity in the nature of a bill *quia timet*.

One Andrew Brandell was, on the 29th day of October, 1875, the owner of a certain parcel of land situate in the town of Allegany, in the county of Cattaraugus, and on that day entered into a contract with one George W. Stevens, which was mutually executed under seal by the said parties, whereby Brandell " leased, let, and demised " said lands to said Stevens, his heirs and assigns, for the term of fifteen years, for the uses and purposes following: Said Stevens, his heirs and assigns, employees and lessees, were to have, at all times during the said term, the right to enter upon and occupy said lands, and take thereon all necessary tools with implements and machinery, and to work and use the same for the purpose of sinking a shaft, or shafts, or drilling, boring, or digging any well or wells, for petroleum, oil, salt or other mineral or vegetable substance, or deposit, which might be found or discovered to be upon, in or under said premises, and to erect any building or buildings which they might find necessary to be erected for such purposes, or which they might need for storage, or refining any oil or other substance so found, and to remove the same from said

premises. And in case any petroleum, oil, salt or other substance or deposit should be found or discovered, they were to have the full right and authority during the said term to enter upon and occupy said premises, by themselves, their heirs, assigns, employees or lessees, and to take any method which they might find profitable or desirable to dig, drill, bore, pump or mine for the purpose of obtaining the same, or removing the same, and were to have and hold the same to themselves, reserving nevertheless to Brandell, one-eighth part thereof, and in and by the said contract it was provided that unless said Stevens, his heirs, &c., should commence operations for boring, digging or building, as above stated, upon the said premises, or cause the same to be done, within the period of nine months from the date of the said contract, said contract should become void, and cease to be of any binding effect. The contract was duly acknowledged and recorded in Cattaraugus county.

Stevens afterwards assigned one-half of his interest under said contract to James Nichols, and the two afterwards assigned the same to the Bradford Oil Company, a corporation organized under the laws of the State of Pennsylvania.

The said period of nine months, within which it was provided by said contract that said Stevens or his assigns should commence operations, expired on the 29th day of July, 1876, and nothing was done by way of commencing the operations mentioned in said contract, either before or after the 29th of July, 1876, until in the month of February, 1877, when the Bradford Oil Company commenced to sink a well.

But Brandell remained in the full and undisturbed possession of the premises, and, as the court has found, " *did not in any manner waive*, extend or qualify the fulfillment of the condition." On the 7th day of September, 1876, after the time specified in the said condition had expired, he executed, acknowledged and delivered to A. R. Marsh and others, another lease or contract, similar in substance to the contract executed to Stevens, and conferring upon the said A. R. Marsh and others rights similar to those which had been conferred upon Stevens by the lease or contract executed by Brandell to him. This latter contract was duly recorded in the office of the

clerk of Cattaraugus county on the 17th day of January, 1876, and was, for a valuable consideration, before the recording thereof, transferred by A. R. Marsh and others, the lessees named in the said lease or contract, to the plaintiff in this suit.    It was expressly provided in the agreement with Stevens that the contract executed to him was not intended to interfere with the use and occupancy of the premises by Brandell except as provided in the contract, and not to embrace any of the crops or timber of said land.   By the contract with A. R. Marsh and others Brandell granted to them the exclusive right to dig and bore for petroleum, &c., for twelve years from the date of the latter contract, reserving one-eighth part of the petroleum or oil which should be secured, and provided that the said contract should be void unless the lessees or their assigns should commence operations on the premises within one year from the date of the contract.

. On the 22d of February, 1877, Brandell being still in possession, the defendant, the Bradford Oil Company, commenced putting up a derrick on the premises, for the avowed purpose of putting down an oil well and "developing" the territory under the Stevens contract, when the plaintiff formally notified the Bradford Oil Company of the lease or contract made by Brandell with A. R. Marsh and others, and its transfer to the plaintiff, and required that the said Bradford Oil Company and its employees should cease operations on the land and quit possession, which they refused to do, and commenced to sink an oil well and continued prosecuting the work until they were stopped by the injunction issued in this action.   The plaintiff, within one year from the date of the contract between Brandell and A. R. Marsh and others, entered upon the premises under the said contract as permitted by its terms, and put down an oil well, and have ever since remained in possession of so much of the premises as by the contract with Brandell it is permitted to occupy for the purposes specified in the contract.

This suit is instituted to restrain the Bradford Oil Company and its employees from interfering with the exercise by the plaintiff of the exclusive rights secured by the contract between Brandell and A. R. Marsh and others, assigned to the plaintiff, and to be quieted in its title, and to have it adjudged that the rights secured to Stevens

and his assigns by the contract of the 29th of October, 1875, were forfeited by the omission on the part of Stevens and his assigns to commence, or cause to be commenced, on the premises operations for the purposes specified in said contract, within nine months from the date thereof; and the trial judge, after finding the facts substantially as above stated, has made a judgment to that effect. Brandell was made a party defendant to the action, but made no defense. Several questions are made before this court on the appeal.

It is claimed that if, as the court below has found, the lease or contract with Stevens became absolutely void on account of the non-fulfillment of the condition which had occurred prior to the commencement of the suit, then it did not constitute a cloud upon the title of the plaintiff, and the defendant, the Bradford Oil Company, was a mere trespasser, and the plaintiff had an adequate remedy at law.

Although, as a general rule, it is true that an action canno̅ be maintained by a plaintiff to remove, as a cloud upon his title, con-veyances, or liens or incumbrances which appear to be void up on the face thereof, yet the authorities show that a different rule prevails when the subject of the controversy is mines or mining property or claims.

STORY's work on Equity Jurisprudence, § 860, says, in speaking of the general rule: "Cases of mines and collieries may also be mentioned, where courts of equity will entertain bills in the nature of bills *quia timet* and bills of peace, . . . and upon such a bill the court will grant adequate remedy by quieting the party in the enjoyment of his right, . . . and by establishing his right by a decree;" and in section 929 he says, "An injunction is now granted in all cases of timber, coal, ores and quarries where the party is a mere trespasser, or where he exceeds the limited rights with which he is clothed, upon the ground that the acts are or may be an irreparable damage to the particular species of property." And see *West Point Iron Co.* v. *Reymert*, 45 N. Y., 703, where the same principle is laid down.

It is furthermore claimed that the lease was not void, but only voidable, at the election of Brandell, on account of the failure of the lessee to commence operations within the nine months speci-

fied in the lease, and that it was necessary that Brandell should have elected to forfeit the contract at the time of the breach of the condition, and given notice thereof to the Bradford Oil Company.

The condition is as follows: "And the said party of the second part hereby covenants and agrees to and with the party of the first part, that unless he commences operations for boring, digging, or drilling, or building, as above stated, upon said premises, or causes the same to be done within the period of nine months from the date hereof, then this lease is to become void and cease to be of any binding effect."

Time, in this case, was of the essence of the contract, from the situation of the property and the nature of the acts to be done. The only consideration for the contract resulting to Brandell was one-eighth of the products which should be realized by Stevens or his assignees by the operations contemplated by the contract. The contract provided that Brandell, the owner of the fee, should not be interfered with in his use of the land for the purposes of tillage, &c., and he remained in the possession of the farm. He could not be required to enter in order to enforce the forfeiture. "The law never requires a party to enter on himself." (1 Smith Lead. Cas., mar. pag. 109.) If the grantor have an estate in possession, he may convey the same at once, as the forfeiture will be complete without entry or claim. (*Dumpors' case*, 1 Smith Lead. Cas., 109.)

In *Boisaubin* v. *Reed* (2 Keyes, 323), under a contract for the sale of timber on certain land, with the right to enter for the purpose of cutting and carrying away, "for and during the term of ten years," it was held that the party claiming under the contract could not enter after the expiration of the ten years, even for the purpose of removing the timber cut before the expiration of the time limited by the contract. In *Kellam* v. *McKinstry* (69 N. Y., 264), where a written contract was made to sell all the bark on the hemlock trees standing on a specified piece of land, to be paid for by installments, the purchaser agreeing to have said bark peeled, piled, measured and settled for in full by the first of September, 1864, it was held that the contract required the completion and fulfillment thereof by the purchasers at the time specified; and that upon failure to perform, their right to peel and carry away the bark termi-

nated; and the grantor, after such failure, having sold the bark to another, who peeled and removed the same and sold it to another, it was held that the assignee of the first purchaser from the owner of the land acquired no title, and could not maintain an action for the conversion of the bark. (See also *McIntyre* v. *Barnard*, 1 Sandf. Ch., 52.) Where the condition absolutely, as in this case avoids the lease or license in case of a breach, the estate lapses, without any entry or notice. (Smith Lead. Cas., *supra*, notes to *Dumpors' case*.) Besides, we are of opinion that in this case the granting of the lease to another party after the breach of the condition was an exercise on the part of Brandell of his right to forfeit the lease originally granted to Stevens, if any positive act on the part of Brandell had been necessary to consummate the forfeiture. It clearly showed Brandell's intention to hold the Stevens lease, in the language of the contract, void, and that it had ceased to have any binding effect. (*Parmelee* v. *Oswego R. R. Co.*, 2 Seld., 81; *Stuyvesant* v. *Davis*, 9 Paige, 427.)

In *Parmelee* v. *Oswego R. R. Co.* (*supra*), where lands were set apart by the commissioners of the Land Office for the purpose of erecting thereon structures for the manufacture of salt, conditional upon the lessees erecting, within a specified time, works for the purpose of such manufacture, it was held that the interest of the grantee ceased at the expiration of the time limited, no such structures having been erected; the court holding: In this respect such interest is like an estate for years, which, *ipso facto*, ceases, without entry, on the breach of the condition annexed to the estate, when there is nothing in the lease to qualify the effect of such breach.

The lease under which the plaintiff claims was duly recorded in Cattaraugus county, on the 17th day of January, 1877. The Bradford Oil Company, claiming under the Stevens lease, entered on the premises on the 22d day of February, 1877, and commenced to put down an oil well, having, therefore, at the time, full constructive notice of the lease under which the plaintiff claims, and of the plaintiff's exclusive right. The defendant offered to prove that Brandell consented, on the 20th day of February, 1877, to the entry of the Bradford Oil Company on the premises,

and the commencement of operations to bore for oil thereon. The evidence was objected to and excluded. We think the exclusion of the evidence was correct. The defendant did not offer to show that such entry was made without notice to the defendant of the exclusive lease to A. R. Marsh and others, which was at the time on record. Brandell, by that lease, had parted with the right to renew his lease to the Bradford Oil Company while the contract with Marsh and others continued in force, and the evidence was immaterial.

For the foregoing reasons we think the judgment was correct.

SMITH and HARDIN, JJ., concurred.

Judgment affirmed, with costs.